# GREAT FALLS & OLD DOMINION RAILROAD COMPANY *v.* HAMMERLY.*

CARRIERS; STATIONS; PASSENGERS; NEGLIGENCE; CONTRIBUTORY; WITNESSES.

1. A person who stands upon the station platform of a suburban electric railway, and signals an approaching car to stop in order that she may take passage, is in the railway company's constructive care, and sustains to it the relation of passenger.

2. It is for the jury to determine questions as to the negligence of a carrier in disregarding the signal of an intending passenger, and running its car at high speed past the station, and as to the contributory negligence of the passenger in standing in such proximity to the track as to be unsteadied and caused to fall "by the rush of air."

3. The speed of a suburban electric car may be found to have caused the fall of an intending passenger who, expecting it to stop in obedience to her signal, stood near the edge of the platform, but not near enough to be struck by the car.

4. A suburban electric railway company which impliedly invites passengers to assemble upon its platform, and gives them reason to believe that its cars will be stopped upon their signal, is charged with the duty, in running its cars past such point, to take such reasonable precautions as will in the circumstances properly insure their protection.

5. A woman weighing nearly 200 pounds who, intending to board an approaching suburban electric car, signals it in the expectation that it will stop, is not guilty of contributory negligence in law, for failure to step back from the zone of "rushing air" upon first discovering, when the car, going at the rate of 50 miles an hour, is but 50 or 100 feet away, that it is not going to stop.

---

*Carriers; passengers.*—Upon the question of the effect of signaling a car to make one a passenger, see notes to *Karr* v. *Milwaukee Heat, Light & Traction Co.* 13 L.R.A.(N.S.) 283, and *Jaquette* v. *Capital Traction Co.* 25 L.R.A.(N.S.) 408; as to what injuries may be deemed the proximate result of failure to stop street car for waiting passenger, see note to *Stephens* v. *Oklahoma City R. Co.* 33 L.R.A.(N.S.) 1007.

6. The contention by the plaintiff in an action against a carrier for in-
    juries, based upon the ground that the defendant's car passed a
    station on which the plaintiff was standing, so fast that "the rush of
    air" caught the plaintiff, an intending passenger, and "so unsteadied
    her that she fell," does not entitle the defendant to elicit an answer
    to the question whether a person of plaintiff's size would be "whirled
    around and taken up by the gust of air," especially where the defend-
    ant had already been permitted to introduce evidence tending to show
    the effect upon the plaintiff of the current of air from the car.

No. 2472.    Submitted January 10, 1913.    Decided April 7, 1913.

HEARING on an appeal by the defendant from a judgment of
the Supreme Court of the District of Columbia, on verdict, in
an action to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment for the plaintiff, Mollie C. Ham-
merly, in the supreme court of the District in an action for
damages for personal injuries alleged to have been sustained
at the Dominion Heights, Virginia, station of the defendant,
the Great Falls & Old Dominion Railroad Company, a subur-
ban electric railway company, while plaintiff was on the sta-
tion platform and in the act of signaling an approaching car
to stop and take her on as a passenger.

The declaration alleges that the motorman of the defendant
saw plaintiff for a long time, to wit, sixty seconds, before his
car reached said station, and that, totally disregarding his duty,
he carelessly and negligently ran his car past the station at a
great speed, to wit, 50 miles an hour, "thereby causing a rush
of wind which caught the said plaintiff and so unsteadied her
that she fell, and in falling was struck by the rear end of said
car."

The evidence in behalf of plaintiff tended to support the
averments of the declaration.  Between 9 and 10 o'clock at
night she was upon the station platform waiting to board a
car.  She saw one approaching, heard it whistle, stepped

then constructively in its care, when it not only failed to stop its car in response to their signal, but rushed that car by the station as fast as it could go? We think not. Having impliedly invited prospective passengers to assemble upon its platform, and having given such prospective passengers reason to believe its cars would be stopped upon their signal, it was clearly its duty in passing such a point to take such reasonable precautions as would, in the circumstances, properly insure their protection. The rule applicable to express trains that stop at scheduled points only has no relation to an electric railway car that is supposed to stop at all stations if signaled. It might constitute contributory negligence for a prospective passenger to place himself so near the edge of the platform of a station at which an express train was not scheduled to stop, as to be affected by the passing of such train, while such passenger would be justified in assuming the same position for the purpose of signaling an approaching electric car that was expected to stop.

In the present case the evidence is to the effect that the signal was given in ample time to have permitted the stopping of the car. The plaintiff was in a position of safety, had the car either stopped or passed at a reasonable rate of speed. When the car was within 50 or 100 feet of her, she realized it would not stop because "it was running too fast." It is urged that she was negligent in failing immediately to step back. Assuming that the car was going 50 miles an hour, and we think the jury would have been warranted in finding that to have been its speed, it was going $73\frac{1}{3}$ feet a second. Plaintiff fixed the distance of the car from her when she realized it would not stop at about 50 or 100 feet. It is apparent, therefore, that only about a second of time interposed between her realization that the car would not stop and the accident. To say that a woman weighing nearly 200 pounds, situated as she was, startled as she may have been,—indeed as she says she was,— was guilty of contributory negligence because she permitted a second to elapse without getting out of the way, would be to usurp the functions of the jury. Clearly it was for them to

decide, as practical men, whether plaintiff's conduct was not natural and reasonable.

The second assignment of error is based upon the refusal of the court to permit an answer to the question whether it would be reasonable or likely that a person weighing 180 or 190 pounds, standing 3 or 4 feet from a car going at 30 or 40 miles an hour passing a station, would be whirled around *and taken up* by the gust of air. Plaintiff made no such contention, either in her declaration or in her proofs. As previously pointed out, her contention was that the excessive rate of speed of the car "so unsteadied her that she fell." The difference between the contention and evidence of the plaintiff and the question propounded by the defendant is so apparent that we forbear further discussion of the question. The court had already permitted the defendant to introduce evidence tending to show the effect upon the plaintiff of the current of air from the car. The proposed question had no bearing upon any issue of the case, and was properly excluded.

Finding no error in the record, the judgment is affirmed, with costs.                                          *Affirmed.*